UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
                                                )
NICHOLAS A. RITROVATO, III,                     )
                                                )
            Plaintiff,                          )
                                                )
      v.                                        )
                                                )   Case No. 23-cv-10820-DJC
                                                )
CAPTAIN JAMES M. DONOVAN and                    )
SOMERVILLE POLICE DEPARTMENT,                   )
                                                )
            Defendants.                         )
                                                )
_____       )

## MEMORANDUM AND ORDER

**CASPER, J.**                                          **March 11, 2025**

### I.    Introduction

Plaintiff Nicholas A. Ritrovato, III ("Ritrovato"), acting *pro se*, has filed this lawsuit against Police Captain James M. Donovan ("Donovan") and the Somerville Police Department ("SPD") (collectively, "Defendants") seeking both monetary damages and injunctive relief under 42 U.S.C. § 1983 for alleged violations of his Second and Fourteenth Amendment rights.  D. 1, 33.  Defendants have moved to dismiss the operative, amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D. 34.  For the reasons stated below, the Court ALLOWS the motion to dismiss in part and DENIES it in part.  D. 34.

### II.    Standard of Review

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) challenge, the Court must determine if the complaint "plausibly narrate[s] a claim for relief."  Schatz v.

Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. (citation omitted). Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. (citation omitted). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

## III.    Factual Background

The following facts are drawn from Ritrovato's amended complaint, D. 33, and are accepted as true for the purposes of resolving the motion to dismiss.

Ritrovato first applied for a license to carry firearm in July or August 2008. Id. ¶ 8. In his first application, Ritrovato indicated that he had a driving under the influence incident in California. Id. He erroneously identified that charge as a misdemeanor conviction when it was a civil infraction under California's DMV regulations. Id. His application was denied. Id. In the first denial letter, the then-licensing officer, Captain Paul R. Trant, advised Ritrovato that his application was denied because he was convicted for "a demeanor punishable by imprisonment for more than two years" and because he had "completed the application untruthfully." Id. ¶ 9.

In November 2022, Ritrovato submitted a second license application.  Id. ¶ 10.  Ritrovato included a cover letter in which states that he had completed the first application incorrectly and was submitting a corrected form on the application.  Id.

Around this time, on December 23, 2022, Ritrovato allegedly witnessed Donovan soliciting "a gratuity" for $5,000.00 from an individual named "Different Mike."  Id. ¶ 11.  Donovan and Different Mike allegedly discussed whether Ritrovato "ever needed to get a license at all."  Id. ¶ 13.  On December 28, 2022, Donovan denied Ritrovato's second application and informed Ritrovato in the denial letter that his application was denied because he had "completed the application form untruthfully."  Id. ¶ 12.  Specifically, the letter informed Ritrovato that he had failed to "disclose an arrest for [operating under the influence] on question #4 and also failed to disclose a previous application that was denied on question #13."  Id.

Ritrovato applied for a license to carry for a third time on January 5, 2024.  Id. ¶ 13.  His application was denied on February 6, 2024.  Id. ¶ 14.  In this denial letter, Donovan informed Ritrovato that his application was denied because he had "completed the application form untruthfully," failing to disclose that he was charged with and convicted of DUI/Drugs in California in 2006.  Id.

## IV.    Procedural History

Ritrovato filed his initial complaint on April 14, 2023, D. 1, and a first amended complaint on May 11, 2023.  D. 5.  Both complaints included the Commonwealth of Massachusetts as a defendant.  D. 1; D. 5.  The Commonwealth moved to dismiss.  D. 17.  The Court allowed this motion to dismiss, denied Ritrovato's motion for injunctive relief, D. 26, and allowed Ritrovato to file another amended complaint.  D. 28.  On July 13, 2024, Ritrovato filed an amended complaint against Donovan and the SPD.  D. 33.  Those Defendants now have moved to dismiss the amended

complaint.  D. 34.

## V.    Discussion

### A.    <u>Improper Parties</u>

Defendants argue that SPD cannot be held liable under § 1983.  D. 35 at 6.  Relatedly, they also contend that § 1983 is inapplicable to Captain Donovan to the extent that he is being sued in his official capacity.[1]  <u>Id.</u>  Defendants are correct that SPD is an improper party. "Police departments and state agencies generally are not deemed to be 'persons' for purposes of Section 1983." <u>McNeil v. State of Mass.</u>, No. 14-cv-14370-DJC, 2014 WL 7404561, at *3 (D. Mass. Dec. 30, 2014) (citing <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991); <u>Curran v. City of</u>

---

[1] It is not clear from the amended complaint whether Ritrovato sues Donovan in his official and/or personal capacity.  Where a complaint is ambiguous or silent, the First Circuit has adopted the "course of proceedings" test to determine "the nature of the liability sought to be imposed." <u>Powell v. Alexander</u>, 391 F.3d 1, 22 (1st Cir. 2004).  "Factors relevant to this analysis include the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity." <u>Id.</u> at 22 (citing <u>Moore v. City of Harriman</u>, 272 F.3d 769, 772 n.1 (6th Cir. 2001)).  Additionally, where the plaintiff is <i>pro se</i>, courts in this Circuit have construed the complaint liberally as suing a defendant in both official and individual capacities.  <u>See Niemic v. Massachusetts Dep't of Correction</u>, No.13-cv-11402-JLT, 2014 WL 12796057, at *4 (D. Mass. Mar. 25, 2014).  Here, "the factors cut both ways." <u>Id.</u>  As to the nature of the claims, Ritrovato raises a Section 1983 claim against Donovan for allegedly depriving him of his Second and Fourteenth Amendment rights, D. 33 ¶¶ 6, 19, which is applicable against a defendant in both his or her official and individual capacities.  <u>See Assi v. Hanshaw</u>, 625 F. Supp. 3d 722, 738 (S.D. Ohio 2022).  Further, Ritrovato seeks both injunctive relief and punitive damages against Donovan.  D. 33 ¶¶ 30(b),(d); <u>see Powell</u>, 391 F.3d at 23 (holding that "punitive damages are not available against governmental officials sued in their official capacities"); <u>Pieve-Marin v. Combas-Sancho</u>, 967 F. Supp. 667, 671 (D.P.R. 1997) (noting that money damages are only "available in an individual capacity suit" while injunctive relief is "available in an official capacity suit").  Indeed, the only factor that appears to lean in one direction is the City's defense of qualified immunity, D. 35 at 10, which indicates that the City "interpret[s] [Ritrovato]'s action as being against [Donovan] personally." <u>Mason v. Massachusetts Dep't of Env't Prot.</u>, 774 F. Supp. 2d 349, 360 (D. Mass. 2011).  Given that most of the factors do not point in one specific direction as to liability and that Ritrovato is <i>pro se</i>, the Court construes the complaint as suing Donovan in both his official and individual capacities.

Boston, 777 F. Supp. 116, 120 (D. Mass. 1991)).  Accordingly, the Court allows the motion to dismiss as to SPD.

As to the § 1983 claim against Donovan in his official capacity, "[i]t is well-settled that '[a] suit against a public official in his [or her] official capacity is a suit against the government entity'" that employs him or her, Massachusetts ex rel. Powell v. Holmes, 546 F. Supp. 3d 58, 70 (D. Mass. 2021) (quoting Rosaura Bldg Corp. v. Municipality of Mayaguez, 778 F.3d 55, 62 (1st Cir. 2015)), namely the City of Somerville.  Only a Monell claim (which requires a showing that a plaintiff's injury is the result of a municipal policy or custom) may be asserted against a municipality under § 1983 and here, Ritrovato does not cite any facts or provide any legal argument in support of such claim here.  See Celon v. Erickson, 270 F. Supp. 3d 473, 483 (D. Mass. 2017) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).  Accordingly, the Court also allows the motion to dismiss claims against Captain Donovan in his official capacity.[2]

### B.    Ritrovato's Challenge to the MA Licensing Scheme

#### 1.    Second Amendment

"[T]he Second Amendment protects an individual right to keep and bear arms for the purpose of self-defense."  McDonald v. City of Chicago, Ill., 561 U.S. 742, 806 (2010) (Thomas, J., concurring) (citing D.C. v. Heller, 554 U.S. 570, 635 (2008)).  "Like most rights," however, "the right secured by the Second Amendment is not unlimited." United States v. Rahimi, 602 U.S. 680, 690 (2024) (quoting Heller, 554 U.S. at 626).  Thus, it remains true "that 'the requirement of prior approval by a government officer, or a licensing system, does not by itself render [a firearms]

---

[2] Since the Court has allowed the motion to dismiss against the SPD and Donovan in his official capacity (and there is no § 1983 claim plausibly asserted against the city either), the Court need not reach the punitive damages issue.  The Court also notes, however, that punitive damages are not available, as a matter of law, against a municipality or an official sued in his official capacity.  Powell v. Alexander, 391 F.3d 1, 23 (1st Cir. 2004).

statute unconstitutional on its face.'" Powell v. Tompkins, 926 F. Supp. 2d 367, 379 (D. Mass. 2013) (quoting Com. v. Loadholt, 460 Mass. 723, 726 (2011)), aff'd, 783 F.3d 332 (1st Cir. 2015). Here, Ritrovato poses both a facial challenge and an as-applied challenge to the Massachusetts firearm licensing statute as violative of his Second Amendment rights to keep and bear arms and the Fourteenth Amendment right to equal protection of laws. D. 33 at 1, ¶¶ 21–22. The Court shall address each challenge in turn.

a. Facial Challenge

"A facial challenge is the 'most difficult challenge to mount successfully.'" Satanic Temple, Inc. v. City of Bos., 111 F.4th 156, 168 (1st Cir. 2024) (quoting Rahimi, 602 U.S. at 693). "Such a challenge 'fails if the law is constitutional in at least some of its application,'" Id. (quoting Rahimi, 602 U.S. at 701 n. 2), "not because of a party's particular circumstance." Gaspee Project v. Mederos, 482 F. Supp. 3d 11, 21 (D.R.I. 2020)

Ritrovato alleges that the licensing statute is undermined by the Supreme Court's holding in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). D. 33 ¶ 22. There, the petitioners had challenged a New York licensing scheme under which the government conditioned the issuance of a license to carry firearm on a citizen's showing of some special need – to be assessed by licensing officials – in addition to statutory criteria. Bruen, 597 U.S. at 11. Before analyzing the constitutionality of the New York scheme, the Court sought to clarify the appropriate standard. Id. at 17. The Court noted that Second Circuit had developed a "means-end," two-step test to assess Second Amendment claims whereby a firearms restriction can survive a constitutional challenge if the government can show "that the regulated conduct falls beyond the [Second] Amendment's original scope" and "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." Id at 18. "If a 'core' Second

Amendment right," namely the right to keep and bear arms for self-defense in the home, "is burdened, courts apply 'strict scrutiny' and ask whether the [g]overnment can prove that the law is 'narrowly tailored to achieve a compelling governmental interest.'" Id. at 18–19 (quoting Kolbe v. Hogan, 849 F.3d 114, 133 (4th Cir. 2017)).  "Otherwise, [courts] apply intermediate scrutiny and consider whether the [g]overnment can show that the regulation is 'substantially related to the achievement of a governmental interest.'" Id. at 19 (quoting Kachalsky v. Cnty. of Westchester, 701 F.3d 81, 96 (2nd Cir. 2012)).  Declining to adopt this two-part test, the Supreme Court instead "subbed in another two-step evaluation." Rahimi, 602 U.S. at 744 (Jackson, J., concurring).  Under that approach, "[the Court] first consider[s] whether 'the Second Amendment's plain text covers'" the conduct at issue.  Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 43 (1st Cir. 2024) (quoting Bruen, 597 U.S. at 17).  Assuming it does, the Court next considers whether the regulation is "'consistent with this nation's historical tradition of firearm regulation' and thus permissible under the Second Amendment."  Id. (quoting Bruen, 597 U.S. at 17).

The Bruen "decision addresses only the unusual discretionary licensing regimes, known as 'may-issue' regimes, that are employed by 6 states," including the previous version of the Massachusetts licensing statute.  Bruen, 597 at 79 (Kavanaugh J., concurring); see Solomon v. Fredrickson, No. 20-cv-11894-JDL, 2022 WL 3699369, at *1 (D. Mass. Aug. 4, 2022) (citing Bruen, 597 U.S. at 10–11, 15 n. 2) (stating that "the Bruen Court struck down the 'may issue' licensing provisions of six states, including Massachusetts"), report and recommendation adopted, No. 20-cv-11894-JDL, 2022 WL 3681634 (D. Mass. Aug. 25, 2022).  Thus, the Court clarified that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].'"  Bruen, 597 U.S. at 38 n. 9 (alterations in original) (quoting Drake v. Filko, 724 F.3d

426, 442 (3rd Cir. 2013)).  This is because "'shall-issue' regimes . . . are designed to ensure only that those bearing arms in the jurisdiction are . . . 'law abiding, responsible citizens' . . . and contain only 'narrow, objective, and definite standards' guiding licensing officials."    Id. (quoting Shuttlesworth v. Birmingham, 394 U.S. 147, 151 (1969)).  Accordingly, "non-discretionary 'shall-issue' licensing laws are presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the Bruen framework."  Maryland Shall Issue, Inc. v. Moore, 116 F.4th 211, 222 (4th Cir. 2024) (citing McRorey v. Garland, 99 F.4th 831, 840 (5th Cir. 2024)); see Antonyuk v. James, 120 F.4th 941, 985 n.32 (2d Cir. 2024) (citing Maryland Shall Issue, Inc., 116 F.4th at 216) (agreeing with the Fourth Circuit that "shall-issue" permit processes are presumptively constitutional).

> The current licensing statute at issue here, in relevant part, provides:
>
> A person residing or having a place of business within the jurisdiction of the licensing authority . . . may submit to the licensing authority or the colonel of state police an application for a license to carry firearms, or renewal of the same, which the licensing authority or the colonel shall issue if it appears that the applicant is neither a prohibited person nor determined to be unsuitable to be issued a license as set forth in this section, provided that upon an initial application for a license to carry firearms, the licensing authority shall conduct a personal interview with the applicant.

Mass. Gen. L. c. 140, § 131(d).  This statute, unlike the previous version held unconstitutional by the Bruen Court, does not require an applicant to show a "good reason" to obtain a firearm license. Bruen, 597 U.S. at 15 & n.2 (recognizing Massachusetts as one of the states that require a proper cause to obtain a firearm license); see Mass. Gen. L. c. 140, § 131(d) (2021) (providing that "the licensing authority or the colonel may issue if it appears that the applicant is not a prohibited person as set forth in this section to be issued a license and that the applicant has good reason to fear injury to the applicant or the applicant's property or for any other reason").  Instead, the statute requires that a licensing officer "shall issue" a firearm license unless the applicant is "a prohibited person"

or otherwise ineligible for reasons enumerated in the statute.  Mass. Gen. L. c. 140, § 131(d).  The statute further provides specific criteria for determining whether an applicant is a "prohibited person," among which include those who have committed certain crimes in other states.  Id. § 131(d)(ii); see D. 33 ¶¶ 9, 12, 14 (alleging that Ritrovato's license application was denied for failing to disclose his DUI charge in California).  Given these "'narrow, objective, and definite standards' guiding licensing officials," Bruen, 597 U.S. at 38 n. 9, the statute is presumptively constitutional.  Maryland Shall Issue, Inc., 116 F.4th at 222.  Thus, without more, Ritrovato's facial challenge to the constitutionality of the Massachusetts licensing scheme under the Second Amendment fails.

### b.  As-Applied Challenge

For an as-applied constitutional challenge, Ritrovato must "demonstrate that the statute, as applied to *his or her particular situation*, violates constitutional principles."  Gaspee, 482 F. Supp. 3d at 21 (internal quotation marks and citation omitted) (emphasis in original); see United States v. Barnard, 704 F. Supp. 3d 259, 265 (D. Me. 2023).  To the extent that Ritrovato alleges that his application was denied for any of the reasons enumerated under Mass. Gen. L. c. 140, § 131(d) (which includes but is not limited to convictions for certain criminal offenses committed in other states, id. § 131(d)(ii)), such a claim fails for the reasons articulated above because, both facially and as-applied, "shall-issue licensing regimes are constitutionally permissible."  Bruen, 597 U.S. at 81 (Kavanaugh, J., concurring).  However, reading the amended complaint in the light most favorable to Ritrovato, he also seems to be alleging, that the reasons Defendants gave for the denial of the application were not the true reasons for the denial and that the bribery of Donovan to do so was the reason.  D. 33 ¶¶ 11, 13.  Although Defendants may question the veracity of such allegation, the Court must accept Ritrovato's allegations as true at this juncture.  Moreover, even

a shall-issue licensing scheme, which is otherwise constitutionally sound may still be "subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice." <u>Bruen</u>, 597 U.S. at 81 (Kavanaugh, J., concurring). Here, Ritrovato is alleging that is what occurred here; the shall-issue regime did not operate to deny his license for one of the permissible, statutory prohibitions, but because Donovan was bribed to do so by a third party.

To the extent that Ritrovato also was attempting to rely upon this alleged bribe to Donovan for a separate § 1983 claim, the Court agrees with Defendants that he may not do so. "[T]o seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.* <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997) (emphasis in original). Even assuming that Ritrovato had alleged violation of some federal anti-bribery statute, he would have to show that Congress "intended that the provision in question benefit [him]," that such right is not so "'vague and amorphous' that its enforcement would strain judicial competence" and that the statute "unambiguously impose a binding obligation on the States." <u>Id.</u> at 340-41 (internal citation omitted). Even assuming the allegations in the amended complaint are true, such legal conclusion cannot be made here. D. 35 at 11. A reasonable reading of Ritrovato's amended complaint, however, suggests that he is not alleging this alleged bribery as a basis for a separate § 1983 claim, but as grounds for his as-applied challenge to a shall-issue licensing scheme where the denial of his application was not for one of the permissible, statutory grounds, but because Donovan was bribed to do so. That is, Ritrovato has at least plausibly alleged the elements of a § 1983 claim against Donovan, i.e., that while acting under color of law (as the licensing authority), he deprived Ritrovato of a constitutional right (deprivation of a shall-issue regime where he denied

the license for an impermissible reason).[3]  Although the Court cannot predict what the resolution of this claim might be at summary judgment or trial, this ground of his as-applied challenge survives the motion to dismiss.[4]

>    2.    *Equal Protection*

Ritrovato alleges that the licensing statute "denies him equal protection of the [Fourteenth] [A]mendment" as well.  D. 33 ¶ 22.  Here, Ritrovato provides no factual allegations to support a reasonable inference of any equal protection violations and advances his claim "in a cursory fashion" as he alleges that the denial of his license application "violated equal protection for the same reasons as advanced in support of [his] Second Amendment claim."  Hightower v. City of Boston, 693 F.3d 61, 83 (1st Cir. 2012); see D. 33 ¶ 23 (alleging that the licensing statute forces him to "surrender his core [S]econd Amendment . . . right to the Somerville Police Department while concurrently violating the Fourteenth Amendment equal protection clause").

Even applying a rational basis test here, see Hightower, 693 F.3d at 83 (collecting cases), this claim fails.  "Under the rational basis test . . . [the state] need[s] only [to] articulate some

---

[3] To the extent that Ritrovato seeks recovery of licensing and safety course fees (or a trebling of same), he has failed to state a claim for same.  As explained in Bruen, the Court does not "rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry."  Bruen, 597 U.S. at 38 n.9.  Thus, to state a claim for a Second Amendment violation based upon the imposition of fees and to recover for those fees, the burden is on Ritrovato to allege plausibly that the fees imposed on him were so exorbitant that they effectively infringed on his Second Amendment rights.  See id.  The complaint contains no such allegations.  Accordingly, Ritrovato has not stated a basis to recover any expenses in connection to his licensing application.  See Mills v. New York City, New York, No. 23-cv-07460-JSR, 2024 WL 4979387, at *10-11 (S.D.N.Y. Dec. 4, 2024) (dismissing the plaintiffs' claim that licensing fees violated their Second Amendment rights because plaintiffs have failed to allege plausibly that the fees imposed were unconstitutionally exorbitant).

[4] Given that this portion of Ritrovato's § 1983 claim against Donovan in his individual capacity survives the motion to dismiss so does his claim for punitive damages.  Powell, 391 F.3d at 23 (noting that a "prayer for punitive damages could only be brought against defendant governmental officials who were sued in their individual capacities").

'reasonably conceivable set of facts' that could establish a rational relationship between the challenged laws and the government's legitimate ends." Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 47 (1st Cir. 2003) (quoting Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 978 (1st Cir. 1989)). Such regulatory regime as the Commonwealth's is "substantially related to the important governmental objectives of promoting public safety and preventing crimes" and as such "survives rational basis review." Gould v. O'Leary, 291 F. Supp. 3d 155, 174 (D. Mass. 2017), aff'd sub nom. Gould v. Morgan, 907 F.3d 659 (1st Cir. 2018). Accordingly, Ritrovato's equal protection challenge against the licensing statute fails.

### C.    **Qualified Immunity**

As to the remaining claim against Donovan in his individual capacity, the Court cannot conclude at this juncture that he is entitled to qualified immunity. "Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Thus, to determine whether qualified immunity applies in a given case, [the Court] must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." Id.

Turning to the second prong first, Defendants contend that Donovan is entitled to qualified immunity to the extent he is sued in his individual capacity because the right asserted by Ritrovato was not clearly established at the time of the alleged violation. D. 35 at 10. "'Clearly established' for purposes of qualified immunity means that the contours of the right are 'sufficiently clear' that 'every reasonable official would have understood that what he is doing violates that right.'"

Duclerc v. Massachusetts Dep't of Correction, No. 10-cv-12050-DJC, 2012 WL 6615040, at *7 (D. Mass. Dec. 18, 2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). "The dispositive inquiry 'is whether it would be clear to a reasonable official that his conduct was unlawful *in the situation he confronted*.'" Cardoso v. City of Brockton, No. 12-cv-10892-DJC, 2014 WL 6698618, at *11 (D. Mass. Aug. 11, 2014) (quoting Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 9 (1st Cir. 2013) (emphasis in original)).

The challenged conduct is Donovan's denial of Ritrovato's license applications as alleged, which began on December 28, 2022. D. 33 ¶¶ 12, 14-15. Accordingly, the Court must determine whether the legal contours of gun rights as of that date was sufficiently clear that a reasonable officer in the same or similar situation would have "understood that" denying Ritrovato's application "violated [his] right." Pineiro v. Gemme, 937 F. Supp. 2d 161, 171 (D. Mass. 2013).

As of December 2022, the Supreme Court has issued three major Second Amendment cases that defined the contours of the constitutional rights to keep and bear arms – Heller (2008), McDonald (2010) and Bruen (June 23, 2022). In Heller, the Court recognized "the individual, as opposed to collective, nature" of Second Amendment right. Pineiro, 937 F. Supp. 2d at 171 (citing Heller, 554 U.S. at 579–81). In McDonald, the Court incorporated the Second Amendment against the states by virtue of the Fourteen Amendment. McDonald, 561 U.S. at 767, 791. Lastly, as discussed above, in Bruen, the Court articulated a method to evaluate the constitutionality firearm regulations. Bruen, 597 U.S. at 17. As relevant here, a shall-issue licensing regime, as Massachusetts now has adopted, is constitutionally sound and the denial of an application for an enumerated prohibition (i.e., certain criminal convictions) is permissible. Id.

In addition to Supreme Court precedent, the Court may look to First Circuit precedent as a source of clearly established law. See Est. of Rahim by Rahim v. Doe, 51 F.4th 402, 415 (1st Cir.

2022) (relying upon circuit precedents to determine whether the defendant was entitled to qualified immunity); Wilson v. City of Boston, 421 F.3d 45, 56-57 (1st Cir. 2005) (relying upon "not only Supreme Court precedent, but all available case law") (internal citation omitted).  In Hightower, 693 F.3d at 71, the plaintiff had raised an as-applied challenge to the constitutionality of the same licensing statute at issue here.  Id.  The plaintiff's license to carry was revoked because she had allegedly "completed the application untruthfully."  Id. at 74.  There, the First Circuit held that "[a] requirement that firearms license applicants provide truthful information . . . serves a variety of important purposes."  Id.  Accordingly, the court concluded that "the revocation of a firearms license on the basis of providing false information . . . is not a violation of the Second Amendment."  Id.

Accordingly, to the extent that Ritrovato alleged that his applications were denied for untruthfulness and a failure to disclose disqualifying information, D. 33 ¶¶ 9, 12, 14,  a reasonable officer in Donovan's position, could reasonably believe that it would not violate Ritrovato's constitutional rights in denying his license application on this basis.  See Hayward v. Massachusetts, No. 16-cv-30046-MGM, 2016 WL 11189805, at *14 (D. Mass. Nov. 14, 2016) (holding that the licensing officer, relying upon the Hightower holding, could reasonably believe that he had "acted lawfully" when he denied the plaintiff's application), report and recommendation adopted, No. 16-cv-30046-MGM, 2017 WL 772323, at 2 (D. Mass. Feb. 28, 2017).  Thus, even assuming *arguendo* that there was a violation by Donovan of a constitutional right under the first prong, such right was not "clearly established" under the second prong and, therefore, Captain Donovan is entitled to qualified immunity as to that claim, which is an alternative basis for dismissing the facial challenge and the as-applied challenge that relies upon

the allegation that Donovan denied the application on the basis of untruthfulness and failure to disclose certain information.

Defendants, however, have not clearly articulated how Donovan is entitled to qualified immunity as to the portion of the § 1983 claim against Donovan in his individual capacity that survives (i.e., the as-applied challenge to the licensing scheme where it is alleged that Donovan denied his applications, not for a permissible reason enumerated under Mass. Gen. L. c. 140, § 131(d) or untruthfulness as permitted by law, but because Donovan allegedly was bribed to do so). Given the guidance in Bruen that even a shall-issue licensing regime can be "subject of course to an as-applied challenge if [it] does not operate in that manner in practice," Bruen, 597 U.S. at 81 (Kavanaugh, J., concurring), the Court concludes that Ritrovato has sufficiently alleged a constitutional violation on this basis and Defendants have not shown that such right was not clearly established at the time of the violation.  Accordingly, the Court cannot conclude that qualified immunity bars this surviving portion of Ritrovato's claims.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss in part and DENIES it in part.  The only claim that survives the motion is Ritrovato's § 1983 claim against Donovan in his individual capacity alleging an as-applied challenge to Mass. Gen. L. c. 140, § 131(d) as explained above.  D. 34.[5]

---

[5] To the extent that Ritrovato seeks relief as to the resolution of other property law recovery cases, D. 33 ¶ 30(f), he also has not stated a plausible basis for such relief in accordance with Fed. R. Civ. P. 8(a)(2).  The amended complaint contains no allegations that could allow the Court and the City to discern the substance of these other property recovery cases.  Without any such allegations, it would be unreasonable to "expect [the City] to frame a response to it."  Belanger v. BNY Mellon Asset Mgmt., LLC, 307 F.R.D. 55, 58 (D. Mass. 2015) (internal citation omitted). Accordingly, dismissal as to this request is warranted here.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge