**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **NICHOLAS A. RITROVATO, III,** )<br><br>**Plaintiff,** )<br><br>v. )<br><br>**CAPTAIN JAMES M. DONOVAN,** )<br><br>**Defendant.** ) | **Case No. 23-cv-10820-DJC** |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, C. J.**                                                                        **May 29, 2026**

## I.      Introduction

Plaintiff Nicholas A. Ritrovato, III ("Ritrovato"), acting *pro se*, has filed this lawsuit against Police Captain James M. Donovan ("Donovan") and the Somerville Police Department ("SPD") seeking both monetary damages and injunctive relief under 42 U.S.C. § 1983 for alleged violations of his Second and Fourteenth Amendment rights.  D. 33.  On March 11, 2025, the Court granted Donovan and SPD's motion to dismiss in part and denied it in part, leaving only Ritrovato's § 1983 claim against Donovan in his individual capacity alleging an as-applied challenge under the Second Amendment to Mass. Gen. L. c. 140, § 131(d) remaining.  D. 43. Donovan and Ritrovato have now submitted cross-motions for summary judgment as to this claim. D. 53; D. 54.  For the reasons stated below, the Court ALLOWS Donovan's motion for summary judgment, D. 54, and DENIES Ritrovato's motion for summary judgment, D. 53.

1

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F. 3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F. 3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano– Isern, 605 F. 3d 1, 5 (1st Cir. 2010).  "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'"  Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F. 3d 20, 25 (1st Cir. 2009).  "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn."  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

## III.    Factual Background

The following facts are drawn from Ritrovato's statement of material facts, D. 53-1, Donovan's response, D. 56-1, Donovan's statement of material facts, D. 55-5, Ritrovato's response, D. 58-1, and the exhibits referenced and attached therein.  These facts are undisputed unless otherwise noted.

On August 15, 2008, Ritrovato applied for a license to carry firearms with the SPD ("2008 application"). D. 55-5 ¶ 4; D. 58-1 ¶ 4; see D. 55-2 at 2-12. In his application, Ritrovato indicated that he had never "been convicted of a crime punishable by incarceration by more than one (1) year" and that he had never "appeared in any court as a defendant for any criminal offense (excluding non-criminal traffic offenses)." D. 55-5 ¶ 6; D. 58-1 ¶ 6; D. 55-2 at 3. In connection with this application, Ritrovato authorized a background check which revealed that he had been arrested and convicted for driving under the influence ("DUI") in California in 2006. D. 55-5 ¶ 5; D. 58-1 ¶ 5; D. 55-2 at 14. On September 3, 2008, then-licensing officer Captain Paul R. Trant denied Ritrovato's application, stating in the denial letter that this denial was due to (1) his prior appearance in court as a defendant in a criminal offense and conviction of a misdemeanor punishable by imprisonment for more than two years, and (2) completing the 2008 application untruthfully. D. 55-5 ¶ 7; D. 58-1 ¶ 7; 55-2 at 18.

On December 13, 2022, Ritrovato submitted a second license application ("2022 application"). D. 55-5 ¶ 9; D. 58-1 ¶ 9; see D. 55-2 at 22-33. The application included a cover letter stating that his prior application was "incorrectly completed" and that his current application was correct. D. 55-5 ¶ 10; D. 58-1 ¶ 10; D. 55-2 at 35. Ritrovato again denied ever having been arrested or appearing in court as a defendant for any criminal offense and also denied that he had ever had any firearms license denied. D. 55-5 ¶ 12; D. 58-1 ¶ 12; see D. 55-2 at 23, 27. During Donovan's review of this application, he questioned Ritrovato about his 2006 DUI. D. 55-5 ¶ 13; D. 58-1 ¶ 13. In response, Ritrovato told Donovan that he had received a phone call from Governor Arnold Schwarzenegger telling him that this arrest had been "erased." Id.

According to Ritrovato, on or around December 23, 2022, Donovan "was witnessed" requesting $5,000.00 from an individual named "Different Mike" who lives on the second floor of

3

Ritrovato's apartment.  D. 53-1 ¶ 5.  At some later point, Donovan and "Different Mike" allegedly discussed whether Ritrovato "ever needed to get a license at all."  Id.  On December 28, 2022, Donovan denied Ritrovato's second application and informed Ritrovato in the denial letter that his application was denied because he had "completed the application form untruthfully," D. 55-5 ¶ 14; D. 58-1 ¶ 14, in particular, because Ritrovato "failed to disclose an arrest for OUI" and "failed to disclose a previous application that was denied," D. 55-2 at 39.

On January 16, 2024, Ritrovato submitted a third license application ("2024 application"). D. 55-5 ¶ 15; D. 58-1 ¶ 15; see D. 55-2 at 41-49.  This application also included a cover letter stating that his prior application was "incorrectly completed" and that his current application was correct.  D. 55-5 ¶ 16; D. 58-1 ¶ 16; D. 55-2 at 51.  Ritrovato again denied ever having been arrested or appearing in court as a defendant for any criminal offense.  D. 55-5 ¶ 17; D. 58-1 ¶ 17; D. 55-2 at 42, 45.  Donovan denied Ritrovato's third application and informed him that his application was denied for failing to fill out the application truthfully, D. 55-5 ¶ 19; D. 58-1 ¶ 19, in particular, failing to disclose that he had been charged and convicted of DUI in 2006, D. 55-2 at 56.

## IV.    Procedural History

Ritrovato filed his initial complaint on April 14, 2023, D. 1, and a first amended complaint on May 11, 2023.  D. 5.  Both complaints included the Commonwealth of Massachusetts as a defendant.  D. 1; D. 5.  The Commonwealth moved to dismiss.  D. 17.  The Court allowed this motion to dismiss, denied Ritrovato's motion for injunctive relief, D. 26, and allowed Ritrovato to file another amended complaint, D. 28.  On July 13, 2024, Ritrovato filed an amended complaint against Donovan and the SPD.  D. 33.  On March 11, 2025, the Court granted Donovan and SPD's motion to dismiss in part and denied same in part, leaving only Ritrovato's § 1983 claim against

Donovan in his individual capacity alleging an as-applied challenge under the Second Amendment to Mass. Gen. L. c. 140, § 131(d) remaining. D. 43. On November 18, 2025, Ritrovato moved for summary judgment as to this claim, D. 53, and Donovan filed a cross-motion for summary judgment on November 24, 2025, D. 54. The Court heard the parties on the pending motions and took these matters under advisement. D. 59.

## V.    Discussion

"[T]he Second Amendment protects an individual right to keep and bear arms for the purpose of self-defense." McDonald v. City of Chicago, Ill., 561 U.S. 742, 806 (2010) (Thomas, J., concurring) (citing D.C. v. Heller, 554 U.S. 570, 635 (2008)). As the Court explained in its ruling on Defendants' motion to dismiss, D. 43 at 5-9, which the Court incorporates here, the Massachusetts shall-issue licensing scheme at-issue here, Mass. Gen. L. c. 140, § 131(d) (2022),[1] "is presumptively constitutional," under the Second Amendment, id. at 9 (citing Maryland Shall Issue, Inc. v. Moore, 116 F.4th 211, 222 (4th Cir. 2024)). However, "even a shall-issue licensing scheme, which is otherwise constitutionally sound may still be 'subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice.'" Id. at 10-11 (citing New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 81 (2022) (Kavanaugh, J., concurring)). To succeed on an as-applied constitutional challenge to Mass. Gen. L. c. 140, § 131(d), Ritrovato must "demonstrate that the statute, as applied to *his or her particular situation*, violates constitutional principles." Gaspee Project v. Mederos, 482 F. Supp. 3d 11, 21 (D.R.I. 2020) (internal quotation marks and citation omitted) (emphasis in original); see United States v. Barnard, 704 F. Supp. 3d 259, 265 (D. Me. 2023).

---

[1] The licensing scheme at-issue here is Mass. Gen. L. c. 140, § 131(d) (2022) which was effective August 10, 2022 to October 1, 2024 and has since been superseded by the 2024 iteration which went into effect on October 2, 2024. See St. 2024, c. 135, § 49, eff. Oct. 2, 2024.

A.    **Ritrovato has not established that Mass. Gen. L. c. 140, § 131(d) is unconstitutional as applied to his 2022 and 2024 applications**

Under Mass. Gen. L. c. 140, § 131(d), a licensing officer "shall issue" a firearm license unless the applicant is "a prohibited person" or otherwise ineligible for reasons enumerated in the statute. Mass. Gen. L. c. 140, § 131(d). Ineligible applicants include individuals who are "unsuitable to be issued a license as set forth in this section." Id. As the First Circuit has held, providing false information on a licensing application is a legitimate ground for unsuitability under Mass. Gen. L. c. 140, § 131(d), Hightower v. City of Boston, 693 F.3d 61, 74-76 (1st Cir. 2012), and the denial of a license application on this basis "is not a violation of the Second Amendment," id. at 74; see D. 43 at 13-14. Ritrovato alleges and moves for summary judgment on an as-applied challenge to Mass. Gen. L. c. 140, § 131(d) on the ground that Donovan denied his applications, not for a permissible reason enumerated under this statute or for untruthfulness as permitted by law, but because Donovan allegedly was bribed to do so. D. 33 at 1; id. ¶¶ 21-22; D. 53 at 4-6. Donovan moves for summary judgment on the ground that Ritrovato's license application was denied for Ritrovato's failure to truthfully respond to questions in his applications, in accordance with Mass. Gen. L. c. 140, § 131(d), D. 55 at 4-8, and that Ritrovato provides no admissible evidence in support of his alleged bribery scheme, id. at 8-9.

As to the 2022 and 2024 license applications at issue here, it is undisputed that Ritrovato was arrested and convicted for a DUI in 2006, D. 55-5 ¶ 5; D. 58-1 ¶ 5, and that he denied ever having been arrested or appearing in court as a defendant for any criminal offense in his 2022 and 2024 applications. D. 55-5 ¶ 12; D. 58-1 ¶ 12.[2] It is also undisputed that Ritrovato had his 2008

_____

[2] Ritrovato's contention that his 2006 DUI was a civil infraction under DMV regulations in California, D. 58 at 7; see D. 33 ¶ 21, is belied by the undisputed evidence that he was arrested and convicted for a "misdemeanor" under Cal. Veh. Code § 23152, subd. (a), D. 55-2 at 14, 53,

application denied, D. 55-5 ¶ 7; D. 58-1 ¶ 7; see D. 55-2 at 18, and that he denied ever having a license application denied in his 2022 application, D. 55-5 ¶ 12; D. 58-1 ¶ 12; see D. 55-2 at 39. Although Ritrovato asserts in his opposition that the facts pertaining to his 2006 DUI arrest and conviction are "[n]o longer true given status of any criminal matters," D. 58-1 ¶¶ 12-14, 17-19, he does not reference any record cites to support this assertion but instead references only paragraph 21 of his amended complaint. Id.; see D. 33 ¶ 21. As "'in opposing a motion for summary judgment, a plaintiff must proffer admissible evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition,'" Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662 n.3 (1st Cir. 2010) (internal citation omitted), Donovan's reliance upon his unverified amended complaint is unavailing, see id. Further, Ritrovato may not rest on his pleadings at this juncture. See Anderson, 477 U.S. at 256. As Ritrovato has not proffered admissible evidence to dispute these facts, there is no genuine dispute.

Ritrovato's argument that his 2006 DUI "[was] the subject of an order to vacate," D. 58 at 8, is unavailing. Ritrovato's relies upon his account that Governor Schwarzenegger and Supreme Court Justice Anthony Kennedy told him that his DUI conviction was vacated, see D. 53-2 at 16 ¶ 19; D. 53-1 ¶ 17; see also D. 55-2 at 37, but "[h]earsay evidence is inadmissible unless one of the exceptions to the hearsay rule applies," Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co., 478 F. Supp. 3d 126, 131 (D. Mass. 2020) (citing Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)). No such exception applies here. To the extent Ritrovato also relies upon his amended complaint for this assertion, D. 58-1 ¶ 13; see D. 33 ¶ 21, as explained above, he may not do so, Anderson, 477 U.S. at 256. Regardless, even if Ritrovato had met his

---

which is a criminal offense under the California Vehicle Code, see Cal. Veh. Code § 23152; Gardner v. App. Div. of Superior Ct., 6 Cal. 5th 998, 1001 (2019).

burden of establishing that his conviction was vacated, Ritrovato still did not disclose that he was arrested for this 2006 DUI in his 2022 and 2024 applications and that his 2008 firearms license application was denied in his 2022 application.[3]  Ritrovato's conviction relief argument thus does not alter the conclusion that Ritrovato provided false information on these applications.

Both Ritrovato's false statement in his 2022 application that he never had a license application denied and his false statement in his 2022 and 2024 applications that he had never been arrested or appeared as a defendant for any criminal offense are proper grounds for Donovan to have denied his application under Mass. Gen. L. c. 140, § 131(d).  Hightower, 693 F.3d at 74-76. Donovan's denial of Ritrovato's applications on these bases thus accords with Mass. Gen. L. c. 140, § 131(d)'s shall-issue licensing scheme and "is not a violation of the Second Amendment." Id. at 74.  Further, as explained previously, D. 43 at 12-15, even if, *arguendo*, Donovan violated Ritrovato's Second Amendment rights by denying his applications for untruthfulness and a failure to disclose disqualifying information, "Donovan is entitled to qualified immunity," thus shielding him from § 1983 liability, id. (citing Hayward v. Massachusetts, No. 16-cv-30046-MGM, 2016 WL 11189805, at *14 (D. Mass. Nov. 14, 2016) (holding that the licensing officer, relying upon the Hightower holding, could reasonably believe that he had "acted lawfully" when he denied the plaintiff's application based on plaintiffs' untruthful responses), report and recommendation adopted, No. 16-cv-30046-MGM, 2017 WL 772323, at 2 (D. Mass. Feb. 28, 2017)).

---

[3] To extent that Ritrovato points to a 2024 CJIS record, D. 55-5 ¶ 18, that he was granted some relief from his DUI conviction on July 25, 2022, D. 55-2 at 54; see D. 58 at 7, which predates both his 2022 and 2024 applications, he has not developed this argument, see Watson v. Trans Union LLC, 223 F. App'x 5, 6 (1st Cir. 2007) (noting that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived"); United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003) (explaining that *pro se* litigants are held to this standard) (citations omitted).  Moreover, as discussed above, there were other undisputed bases for the denial of his 2022 and 2024 applications for untruthfulness as discussed above.

Ritrovato contends, however, that Donovan denied his applications, not for a permissible reason enumerated under the statute or for untruthfulness as permitted by law, but because Donovan allegedly was bribed to do so. D. 53 at 4-6. To support this argument, Ritrovato relies upon his interrogatory responses which includes his account of an alleged bribery between Donovan and "Different Mike" on or around December 23, 2022. D. 53-1 ¶ 5; see D. 53-2 at 14-15 ¶ 5. Donovan contends Ritrovato's responses are inadmissible. D. 55 at 8-9; see Fed. R. Civ. P. 56(c)(2) (explaining that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). Although at the summary judgment stage, "'[interrogatory responses] may be given effect so far as they are admissible under the rules of evidence, they should be accorded no probative force where they are not based upon personal knowledge or are otherwise deficient.'" Ako-Annan v. E. Maine Med. Ctr., No. 19-cv-00544-JAW, 2021 WL 3719240, at *21 n.69 (D. Me. Aug. 20, 2021) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990) (alteration in original)).

Ritrovato's interrogatory responses (and his earlier affidavit, D. 19-1), most of which either lacks the requisite personal knowledge or is inadmissible hearsay, attests that on December 23, 2022, Donovan was "requesting" $5,000.00 from an individual on the second floor of his Ritrovato's apartment, presumably "Different Mike," and that Donovan stated that the date on the check was "Christmas." D. 53-2 at 14-15 ¶ 5. While Donovan's alleged statements would qualify as statements as a party opponent, Fed. Rules Evid. Rule 801(d)(2)(A) (identifying categories that are not hearsay), D. 55 at 9, Ritrovato has not shown sufficient foundation for who witnessed the interaction (since he notes seeing Donovan approach the apartment but the observation of the alleged conversation and exchange are in the passive voice, that Donovan "was witnessed" making an exchange. D. 53-2 at 14-15 ¶ 5; D. 19-1). Moreover, the remaining statements consist of an

account of events allegedly occurring at Eastern Bank and at a follow-up meeting between Donovan and "Different Mike" of which Ritrovato does not attest to having firsthand knowledge. Id. Additionally, Ritrovato's statement that Donovan and "Different Mike" discussed whether or not he "ever needed to get a license at all," D. 53-2 at 14-15 ¶ 5, does not identify who allegedly made this statement. These statements are thus both inadmissible at trial and insufficient for purposes of summary judgment. See Ako-Annan, 2021 WL 3719240, at *21 n.69. Thus, Ritrovato has not established that Donovan denied his license applications for other than the undisputed basis of untruthfulness.

Accordingly, Ritrovato's § 1983 as-applied challenge to Mass. Gen. L. c. 140, § 131(d) fails as a matter of law and Donovan is entitled to summary judgment as to same.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Donovan's motion for summary judgment, D. 54, and DENIES, Ritrovato's motion for summary judgment, D. 53.

**So Ordered.**

/s/ Denise J. Casper
Chief United States District Judge
